IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM O'BRIEN,

Plaintiff,

vs. 2:20-cv-00814-LF

KILOLO KIJAKAZI,[1] Acting Commissioner of the Social Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff William O'Brien's Amended Motion to Reverse or Remand Administrative Agency Decision and Amended Brief in Support (Docs. 26, 27), which was fully briefed on June 7, 2021.[2] *See* Docs. 30–32. The parties consented to my entering final judgment in this case. Docs. 7, 19, 21. Having meticulously reviewed the entire record and being fully advised in the premises, I find that Mr. O'Brien's motion is not well-taken, and it will be DENIED.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] Mr. O'Brien filed two motions to reverse or remand and two briefs in support. *See* Docs. 24–27. The Court found Mr. O'Brien's first motion (Doc. 24) moot because he filed an amended motion (Doc. 26). Doc. 28. The Commissioner filed her response to Mr. O'Brien's first motion and brief (Docs. 24, 25). *See* Doc. 30. The Court ordered the Commissioner to file a status report addressing whether an amended response was needed. Doc. 31. The Commissioner's status report stated that the substance of the response was correct, despite references to the incorrect motion and brief. *See* Doc. 32. Mr. O'Brien did not file a reply or a notice of completion of briefing, but the status report notified the Court that the parties agreed that the motion was ready for ruling. *Id*.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

**III. Background and Procedural History**

Mr. O'Brien was born in 1953, graduated from college, and worked as an arc welder, and as the owner-operator of a welding business. AR 36, 230, 255.[5] Mr. O'Brien filed an application for Disability Insurance Benefits ("DIB") in November of 2017—alleging disability since October 1, 2014 due to glaucoma in both eyes, blindness in the left eye, severe arthritis, methicillin-resistant staphylococcus aureus ("MRSA"), and degenerative spinal disease. AR 225–33, 254. The Social Security Administration ("SSA") denied his claim initially on August 23, 2018. AR 150–54. The SSA denied his claim on reconsideration on March 11, 2019. AR 156–61. Mr. O'Brien requested a hearing before an ALJ. AR 162–63. On December 11, 2019, ALJ Cole Gerstner held a hearing. AR 24–58. ALJ Gerstner issued his unfavorable decision on January 22, 2020. AR 10–23.

The bulk of the ALJ's decision analyzes Mr. O'Brien's date last insured ("DLI"). AR 15–16. This analysis hinges on whether Mr. O'Brien met the statutory definition of blindness. *Id*. If Mr. O'Brien met the statutory definition of blindness, he still would have been insured for DIB on his alleged onset date of October 1, 2014. *See* AR 28, 127. If Mr. O'Brien did not meet the statutory definition of blindness, his DLI was December 31, 2005—well before his alleged onset date. *See id.* Mr. O'Brien acknowledged that under the general rules, he did not meet the insured status requirements as of his alleged onset date of October 1, 2014, but argued that he met "the insured status requirements because of blindness." AR 15 (citing AR 356–57 (Exhibit 21E)).

[5] Documents 15-1 through 15-9 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

The ALJ concluded that Mr. O'Brien did not meet the statutory definition of blindness, and, therefore, his DLI was December 31, 2005. AR 15. The ALJ correctly noted that the regulations "essentially define blindness as having central visual acuity in the better eye of 20/200 or less or severe visual field limitations meeting the requirements of listing sections 2.02 or 2.03 of Appendix 1." AR 15.

The ALJ noted that Mr. O'Brien "testified at the hearing that he is blind in the left eye but has vision in the right." AR 15.[6] The ALJ then summarized several pieces of medical evidence showing that the visual acuity in Mr. O'Brien's [right] eye was "within normal limits" and that Mr. O'Brien was "clearly not blind as defined in the Social Security Act and Regulations." AR 15–16. This evidence included the following:

1) A January 2018 consultative medical exam by Dr. Patricia Green showing 20/25 visual acuity in the [right] eye (AR 692);
2) A July 2018 consultative ophthalmological exam by Dr. Michael Lim showing 20/40 visual acuity in the [right] eye "with no evidence of severe visual field limitations" (AR 712–19);
3) A November 2019 optometry record showing 20/20 vision in the [right] eye (AR 835);
4) State agency medical expert opinions stating that Mr. O'Brien did not meet the requirements for statutory blindness (AR 127–28, 143–44).

AR 15–16. Because the ALJ found that Mr. O'Brien was not blind, the ALJ found that his DLI was December 31, 2005. AR 16.

The ALJ found that Mr. O'Brien presented no evidence of a medically determinable impairment or combination of impairments prior to his DLI of December 31, 2005. AR 16.

---

[6] In the remainder of the ALJ decision, the ALJ referred to the left eye when he meant the right eye. The ALJ erroneously stated that Mr. O'Brien had sight in his left eye, rather than in his right eye. AR 15. The ALJ also referred to the wrong eye throughout his summary of the medical evidence. *See* AR 15–16. The Court has corrected the ALJ's citations to refer to the correct eye. These errors by the ALJ are harmless. *See discussion infra* at pp. 8–9.

Indeed, the ALJ noted that Mr. O'Brien presented "no evidence of medical treatment prior to 2013." AR 17. Because Mr. O'Brien presented no evidence of an impairment prior to his DLI, the ALJ found him not disabled at step two of the sequential evaluation process. *Id*.

On December 10, 2020, Mr. O'Brien requested that the Appeals Council review the ALJ's unfavorable decision. AR 222–24. On June 23, 2020, the Appeals Council denied the request for review. AR 1–6. Mr. O'Brien timely filed his appeal to this Court on August 13, 2020.[7] Doc. 1.

## IV. Mr. O'Brien's Claims

Mr. O'Brien argues that he "claimed blindness in his left eye which should have extend[ed] his insured status to the date of application or later." Doc. 27 at 3. The Commissioner responds that Mr. O'Brien failed to demonstrate that he met the statutory criteria for blindness. Doc. 30 at 6–7. Therefore, the Commissioner argues, the ALJ properly found Mr. O'Brien's date last insured was December 31, 2005 and—because this date was well before his alleged onset date of October 1, 2014—the ALJ's decision denying benefits should be affirmed. *Id*. at 5–10. The Court agrees with the Commissioner and will DENY Mr. O'Brien's motion.

## V. Analysis

In general, to be eligible for DIB benefits, a claimant must establish a disabling impairment prior to the expiration of his DLI. *See* 42 U.S.C. § 423(c)(1) (effective Nov. 2, 2015 to Dec. 21, 2020) (defining "insured" for purposes of a DIB claim); 20 C.F.R. §§ 404.131(a), 404.320(b)(2) (discussing insured status for purposes of DIB benefits); SSR 83-10, 1983 WL 31251, at *8 (1983) ("Under Title II, a period of disability cannot begin after a worker's

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

disability insured status has expired.”); SSR 18-01p, 2018 WL 4945639, at *5 (Oct. 2, 2018) (claimant must demonstrate disability prior to the expiration of his or her insured status). There is an exception for claimants who establish statutory blindness, which effectively extends the DLI date when the requisite Listing criteria are met. *See* 42 U.S.C. § 423(c)(1)(B) (eff. Nov. 2, 2015 to Dec. 21, 2020) (DIB insured status requirements “shall not apply in the case of an individual who is blind” within the meaning of the statute).

In the instant case, the parties agree that Mr. O’Brien’s DLI expired on December 31, 2005, absent a showing of statutory blindness. Doc. 27 at 3, 9–10; Doc. 30 at 6–7. The parties disagree about whether Mr. O’Brien showed that he was statutorily blind and therefore entitled to an extension of his DLI. The Court agrees with the ALJ that Mr. O’Brien failed to demonstrate statutory blindness and therefore is not entitled to any extension of his DLI.

A. **Mr. O’Brien failed to demonstrate statutory blindness and therefore is not entitled to an extension of his DLI.**

A claimant has statutory blindness only if his visual disorder meets the criteria of 2.02 or 2.03A.[8] Listing 2.00(A)(2)(c).[9] Listing 2.02 requires “[r]emaining vision in the better eye after best correction is 20/200 or less.” Listing 2.02. Listing 2.03A requires “[c]ontraction of the visual field in the better eye with [t]he widest diameter subtending an angle around the point of fixation no greater than 20 degrees.” Listing 2.03A; *see also* 20 C.F.R. § 404.1581 (“We will consider you blind under the law for a period of disability and for payment of disability insurance benefits if we

[8] The only way to establish statutory blindness is by meeting—as opposed to medically equaling—Listing 2.02 or 2.03(A). *See* Listing 2.00(A)(2)(c) (“You have statutory blindness only if your visual disorder meets the criteria of 2.02 or 2.03A. You do not have statutory blindness if your visual disorder medically equals the criteria of 2.02 or 2.03A, or meets or medically equals the criteria of 2.03B, 2.03C, 2.04A, or 2.04B because your disability is based on criteria other than those in the statutory definition of blindness.”).

[9] The Listings are found at 20 C.F.R. pt. 404, subpt. P, app. 1. All references to the Listings are to those in effect at the time of the ALJ’s decision.

determine that you are statutorily blind. Statutory blindness is defined in the law as central visual acuity of 20/200 or less in the better eye with the use of correcting lens. An eye which has a limitation in the field of vision so that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less").

Mr. O'Brien argues that "Social Security and the ALJ held that he was not blind in his left eye." Doc. 27 at 2. Mr. O'Brien also asserts that "he claimed blindness in his left eye which should have extend[ed] his insured status to the date of application or later." *Id*. at 3. Mr. O'Brien goes on to argue that "[t]he main reasons [he] is blind is he has lost the complete functional capacity of his left eye although he had 20/20 vision in his right eye" and because "[h]e has poor or no depth perception in his binocular vision which is a vocational requirement for a welder." *Id*. at 10. Mr. O'Brien's assertions, however, demonstrate a misapprehension of both the facts and the law applicable in this case.

First, the Court does not agree with Mr. O'Brien's assertion that "the ALJ held that he was not blind in his left eye." The ALJ did refer to the left eye when he meant the right eye. *See* note 6, *supra*. The ALJ erroneously stated that Mr. O'Brien had sight in his left eye, rather than in his right eye. *See id*.; AR 15. The ALJ also referred to the wrong eye throughout his summary of the medical evidence. *See* note 6*, supra*; AR 15–16. However, the fact that the ALJ mixed up Mr. O'Brien's eyes does not negate the reasoning in the ALJ's decision. The evidence that the ALJ relied on clearly shows that Mr. O'Brien retained vision in his right eye. This evidence also clearly shows that Mr. O'Brien did not meet the statutory definition of blindness because he retained adequate vision in his sighted eye. The Court therefore finds the ALJ's errors harmless. *See Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir. 2004) (certain technical errors are minor enough to be harmless); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1169 (10th Cir. 2012) (harmless error where "the ALJ's error was in chronology, not the substance of the visit"); *Poppa v. Astrue*, 569 F.3d 1167,

1172 n.5 (10th Cir. 2009) (finding "a mere scrivener's error" harmless where an ALJ mistakenly wrote that surgeries took place in 2004 instead of 2005).

Second, to meet the statutory definition of blindness, it is not enough for Mr. O'Brien to show that he was blind in only one eye. Mr. O'Brien's argument that a showing of "blindness in his left eye" was sufficient to "extend his insured status," Doc. 27 at 3, is without merit. Statutory blindness is assessed by looking at the better eye. To meet the statutory definition of blindness, Mr. O'Brien must show "visual acuity of 20/200 or less **in the better eye** with the use of correcting lens" or a "limitation in the field of vision" **of the better eye** "so that the widest diameter of the visual field subtends an angle no greater than 20 degrees." 20 C.F.R. § 404.1581 (emphasis added). Mr. O'Brien's arguments focus solely on the limitations in his left eye, and he offers no argument that his right eye meets the statutory requirements for a finding of blindness. *See* Doc. 27 at 7–12. Indeed, Mr. O'Brien admits that he has "20/20 vision in his right eye." Doc. 27 at 10. Finally, his argument that he has "poor or no depth perception," *id*., says nothing about limitations in the visual field of his right eye, which would be the other basis for a finding of statutory blindness.

The ALJ's conclusion that Mr. O'Brien did not meet the statutory definition of blindness is supported by substantial evidence and is free from legal error. The ALJ cited ample medical evidence showing that Mr. O'Brien was not statutorily blind. As discussed above, this evidence included the following:

1) A January 2018 consultative medical exam by Dr. Patricia Green showing 20/25 visual acuity in the [right] eye (AR 692);
2) A July 2018 consultative ophthalmological exam by Dr. Michael Lim showing 20/40 visual acuity in the [right] eye "with no evidence of severe visual field limitations" (AR 712–19);
3) A November 2019 optometry record showing 20/20 vision in the [right] eye (AR 835);
4) State agency medical expert opinions stating that Mr. O'Brien did not meet the requirements for statutory blindness (AR 127–28, 143–44).

AR 15–16. Mr. O'Brien points to no evidence contradicting the evidence relied on by the ALJ. Indeed, Mr. O'Brien points to no evidence which would show the diminished visual acuity or field of vision necessary to meet the statutory definition of blindness. Finally, Mr. O'Brien fails to show any harmful legal error in the ALJ's discussion of this evidence.

**B. Statutory blindness cannot be established by pointing to other impairments in combination.**

Mr. O'Brien argues that the "AL failed to consider any combination of impairments and the effect of defective vision on those impairments." Doc. 27 at 3. Mr. O'Brien asserts that he is disabled because of "left ocular deficits as well as the musculoskeletal and arthritic impairments in COMBINATION." *Id*. at 12. The Commissioner counters that Mr. O'Brien cannot "establish statutory blindness by pointing to other physical impairments in combination with his visual impairments." Doc. 30 at 10. The Court agrees with the Commissioner.

The only way to establish statutory blindness is by meeting—as opposed to medically equaling—Listing 2.02 or 2.03(A). *See* Listing 2.00(A)(2)(c) (emphases added) ("You have statutory blindness **only if** your visual disorder meets the criteria of 2.02 or 2.03A. You do not have statutory blindness if your visual disorder medically equals the criteria of 2.02 or 2.03A, or meets or medically equals the criteria of 2.03B, 2.03C, 2.04A, or 2.04B **because your disability is based on criteria other than those in the statutory definition of blindness**."). Statutory blindness, thus, can only be shown by meeting the specific requirements of the Listings, and it cannot be shown through any combination of impairments. Listing 2.00(A)(2)(c); *Adams v. Bowen*, 872 F.2d 926 (9th Cir. 1989) (holding claimant cannot establish medical equivalency to meet the requisite criteria of statutory blindness); *Walker v. Astrue*, 2009 WL 959968, at *3 (W.D. Penn. April 7, 2009) (unpublished) (Plaintiff "essentially invites the Court to ignore the statutory definition of 'blindness,' and to impose an alternative definition on the Commissioner

through judicial fiat").

Mr. O'Brien points to no evidence that he meets the definition of statutory blindness. The ALJ is prohibited from considering a "combination of impairments" in determining whether Mr. O'Brien is statutorily blind. The ALJ did not err in failing to consider Mr. O'Brien's "combination of impairments" in assessing whether he was statutorily blind.

## VI. Conclusion

For the reasons stated above, the Court finds that the ALJ applied the correct legal standards, and his decision is supported by substantial evidence. None of Mr. O'Brien's arguments have merit.

IT IS THEREFORE ORDERED that Mr. O'Brien's Amended Motion to Reverse or Remand Administrative Agency Decision (Doc. 26) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's final decision is AFFIRMED, and this case is dismissed with prejudice.

Laura Fashing
United States Magistrate Judge
Presiding by Consent